Law Office of Blake D.   Gunn
P.O.   Box 22146
Mesa, Arizona 85277
Telephone: (480) 270-5073
Fax: 480-393-7162
Blake.Gunn@gunnbankruptcyfirm.com

Blake D.   Gunn, SBN 019112
Attorney for Debtor in Possession

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **IN PETER SCOTT TULLY,** | Case No.   2:15-bk-06726-GBN |
| **Debtor in Possession.** | Chapter 11 |

## PLAN OF REORGANIZATION

CREDITORS SHALL BE PROVIDED FOR AND PAID AS STATED IN THIS PLAN.    THE PROVISIONS OF A CONFIRMED PLAN BIND THE DEBTORS AND ALL CREDITORS, WHETHER OR NOT SUCH CREDITOR HAS ACCEPTED THE PLAN.    CONFIRMATION OF THE PLAN BINDS ALL CLAIMANTS TO TREATMENT OF CLAIMS AS PROVIDED FOR IN THIS PLAN.   THE BINDING EFFECT IS REGARDLESS OF ANY PROOF OF CLAIM WHICH MAY BE FILED.   11 U.S.C.  §1141(a).

## 1.    INTRODUCTION

Peter Scott Tully, the Debtor-in-Possession ("Debtor"), propose this Plan of Reorganization (the "Plan") for the resolution of his outstanding Creditor Claims.    All Creditors are encouraged to consult the Disclosure Statement before voting to accept or reject this Plan.   The Disclosure Statement contains a discussion of the Debtor's background information and history, current status and financial information and a summary and analysis of this Plan.

## 2.    DEFINITIONS

"Administrative Claim" shall mean any Claim under § 503(b) of the Bankruptcy Code that is entitled to priority under § 507(a)(2) of the Bankruptcy Code.

"Allowed Claim" shall mean: (a) a Claim which has been scheduled by the Debtors pursuant to 11 U.S.C. § 521(1), other than a Claim scheduled as disputed, contingent or unliquidated; (b) a Claim which has been filed pursuant to 11 U.S.C. § 501(a) and as to which no objection to the allowance thereof has been interposed within any applicable time limitation fixed by the Bankruptcy Code or by an order of the Bankruptcy Court, or to which an objection has been determined in whole or in part by a Final Order of the Bankruptcy Court; and (c) a Claim which has been granted pursuant to a Final Order of the Bankruptcy Court. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim from and after the Petition Date.

"Allowed Priority Claim" shall mean the portion of an Allowed Claim entitled to priority under §§ 507(a)(1), (3), (4), (5), (6), (7) , (8) , (9) or (10) of the Bankruptcy Code.

"Allowed Unsecured Claim" shall mean an Allowed Claim, other than an Administrative Claim, or an Allowed Priority Claim.

"Bankruptcy Code" shall mean the United State Bankruptcy Code as defined in 11 U.S.C. 101, et. seq.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Arizona, Phoenix Division, having jurisdiction over this case or any proceeding arising under, in, or relating to this Case.

"Bankruptcy Rule" shall mean the Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"BAPCPA" shall mean the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), as amended.

"Bar Date" shall mean the date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

"Chapter 11" shall mean Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, et seq.

"Claim" shall mean: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, where such right arose or accrued prior to Confirmation; or (c) a claim arising under 11 U.S.C. § 502(g), all as set forth in § 101(5) of the Bankruptcy Code.

"Claimant or Creditor" shall mean any person or entity that asserts a Claim.

"Class" shall mean a category of holders of Claims or Interests as described in this Plan.

"Confirmation" shall mean the date on which the Bankruptcy Court enters an Order confirming the Plan.

"Creditor" shall mean a Person that has a Claim against the Debtors that arose on or before the Petition Date or that has a Claim against the Debtors' estate of any kind specified in §§502(g), 502(h) or 502(i) of the Bankruptcy Code.

"Confirmation Date" means the date on which the Court enters its Order of Confirmation.

"Debtor" shall mean Peter Scott Tully.

"Disbursing Agent" shall mean the Reorganized Debtors. The Disbursing Agent shall make distributions to holders of Allowed Claims under the Plan.

"Disclosure Statement" shall mean the Debtors' Disclosure Statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

"Effective Date" means the first day following thirty (30) days after the entry of a Final Order confirming the Plan.

"Final Order" means an Order or Judgment which has not been stayed.

"Homestead" means the Debtors' residence located at 135 Manton Drive, San Jose, CA 95123.

"Person" includes an individual, partnership and corporation and is further defined in § 101(41) of the Bankruptcy Code.

"Petition Date" means the Petition filing date in this Chapter 11 case: February 14, 2012.

"Plan Account" means the FDIC insured money market checking/savings account opened and maintained for the purpose of holding Plan Funds pending distribution to claimants under the terms of the Plan, Article 5.1.

"Plan Fund" means the funds in the Article 5.1 Plan Account.

"Plan, or Plan of Reorganization" means this Plan of Reorganization proposed by the Debtors, including any amendment or modification made in accordance with applicable provisions of the Code.

"Pro Rata" means the ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

"Reorganized Debtor" means the Debtor after the Effective Date.

"Secured Claim" means a Claim secured by Debtor's property in an amount equal to the lesser of the Allowed Claim of that Creditor or the value of the property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same property.

"Unsecured Claim" means any Claim other than an Administrative Claim or a Secured Claim.

3.    **CLASSIFICATION OF CLAIMS**

Claims and Interests are placed in the following Classes:

3.1    <u>Class 1 (Administrative):</u>

Class 1 consists of all Administrative Claims, including attorneys' fees and unpaid fees to the US Trustee. The Debtor estimates that Class 1 Claims will be no less than $10,000.00. Class 1 is unimpaired.

3.2    <u>Class 2 (Priority Tax Claims):</u>

Class 2 consists of all Claims which are entitled to priority treatment pursuant to § 507(a)(8) of the Bankruptcy Code. There are four potential Class 2 Claims, although the amount

of the claims is unknown.  The Class 2 Claims will receive interest at the rate of four percent (4%) until paid.   The Debtor estimates that Class 2 Claims will be not exceed $3,000.00 dollars.   Class 2 is impaired.

   3.3   <u>Class 3 (Priority Non-Tax Claim)</u>:

   Class 3 consists of Priority Non-Tax Claims which are entitled to priority under §§ 507(a)(1) through 507(a)(10) of the Bankruptcy Code.    The Debtor has $6,530.00 in potential priority claims, and the Debtor holds sufficient pre-petition funds to satisfy those claims if they become allowed claims.   Class 3 is unimpaired.

   3.4   <u>Class 4 (Foxwood, LLC)</u>:

   Class 4 consists of the Allowed Secured Claim of Foxwood LLC, secured by a first position Deed of Trust against the Debtor's principal residence at 248 W. Desert Avenue, Gilbert, Arizona.   The Debtor estimates that the Class 4 Claim is no more than $80,686.54.   Class 4 is impaired.

   3.5   <u>Class 5 (Citimortgage, Inc.)</u>:

   Class 5 consists of the Claim of Citimortgage, Inc. ("Citimortgage") which is secured by a first position Deed of Trust (the "Citimortgage Lien") against the Debtor's rental property located at 1168 E. Tyson St., Gilbert, Arizona.  The prepetition amount owed on the Citimortgage Lien is $126,286.21.   Class 5 is impaired.

   3.6   <u>Class 6 (Provident Funding)</u>:

   Class 6 consists of the Claim of Provident Funding ("Provident") (or the current real party in interest) which is partially secured by a first position Deed of Trust (the "Provident Lien") against the rental property located at 3352 E. Powell Place, Chandler, Arizona (the "Powell Property").  The prepetition amount owed on the Provident Lien is $343,243.19.   Class 6 is impaired.

   3.7   <u>Class 7 (Wells Fargo)</u>:

   Class 7 consists of the Claim of Wells Fargo ("Wells Fargo") (or the current real party in interest) which is partially secured by a first position Deed of Trust (the "WF-Hinds Lien") against the rental property located at 6088 E. Hinds Street, Bay Saint Louis, Mississippi.   The

- 5 -

Debtor estimates that the prepetition amount owed on this claim is $103,622.55. Class 7 is impaired.

     3.8    <u>Class 8 (Wells Fargo)</u>:

        Class 8 consists of the Claim of Wells Fargo ("Wells Fargo") (or the current real party in interest) which is partially secured by a first position Deed of Trust against the rental property located at 6092 E. Hinds Street, Bay Saint Louis, Mississippi. The Debtor estimates that the prepetition amount owed on this claim is $105,672.64. Class 8 is impaired.

     3.9    <u>Class 9 (Wells Fargo Bank)</u>:

        Class 9 consists of the Claim of Wells Fargo Bank ("Wells Fargo") which is secured by a first position Deed of Trust (the "Wells Fargo-8509 Lien") against the Debtor's rental property located at 8509 Bonanza Street, Aubrey, Texas. The prepetition amount owed on the Wells Fargo-8509 Lien is approximately $149,319.01. Class 9 is impaired.

     3.10    <u>Class 10 (US Bank)</u>:

        Class 10 consists of the Claim of Wells Fargo Bank ("Wells Fargo") which is secured by a first position Deed of Trust (the "Wells Fargo-8513 Lien") against the Debtor's rental property located at 8513 Bonanza Street, Aubrey, Texas. The prepetition amount owed on the Wells Fargo-8513 Lien is approximately $132,889.07. Class 10 is impaired.

     3.11    <u>Class 11 (Bank of America)</u>

        Class 11 consists of the Claim of Bank of America ("BofA") which is secured by a first position Deed of Trust (the "BofA Lien") against the Debtor's rental property located at 818 S. Westwood Drive, #218, Mesa, Arizona. The prepetition amount owed on the BofA Lien is approximately $27,098.27. Class 11 is impaired.

     3.12    <u>Class 12 (Nationstar Mortgage)</u>

        Class 12 consists of the Claim of Nationstar Mortgage ("Nationstar") which is secured by a first position Deed of Trust (the "Nationstar Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #125, Mesa, Arizona ("2831-125 Property"). The prepetition amount owed on the Nationstar Lien is $70,175.05. Class 112 is impaired.

     3.13    <u>Class 13 (Bank of America)</u>

Class 13 consists of the Claim of Bank of America ("BofA") which is secured by a first position Deed of Trust (the "BofA Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #122, Mesa, Arizona ("2831-122 Property"). The prepetition amount owed on the BofA Lien is $71,407.49. Class 13 is impaired.

3.14    Class 14 (Nationstar Mortgage)

Class 14 consists of the Claim of Nationstar Mortgage ("Nationstar") which is partiallysecured by a first position Deed of Trust (the "Nationstar Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #211, Mesa, Arizona ("2831-211 Property"). The prepetition amount owed on the Nationstar Lien is $93,789.68. Class 14 is impaired.

3.15    Class 15 (Bank of America)

Class 15 consists of the partially secured claim of Bank of America arising from a second position deed of trust on real property located at 1168 E. Tyson St., Gilbert, Arizona, and the pre-petition lien amount is $201,940.95. Class 15 is impaired.

3.16    Class 16 (Wells Fargo Bank)

Class 16 consists of the partially secured claim of Wells Fargo Bank arising from a second position deed of trust on real property located at 818 S. Westwood Dr., #218, Mesa, Arizona. The prepetition lien amount is $102,532.00. Class 16 is impaired.

3.17    Class 17 (Wells Fargo Bank)

Class 17 consists of the unsecured lien claim of Wells Fargo Bank arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #125, Mesa, Arizona. The prepetition lien amount is $98,572.00. Class 17 is impaired.

3.18    Class 18 (Bank of America)

Class 18 consists of the unsecured lien claim of Bank of America arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #211, Mesa, Arizona. The prepetition lien amount is $94,482.76. Class 18 is impaired.

3.19    Class 19 (Bank of America)

Class 19 consists of the unsecured lien claim of Bank of America arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #211, Mesa, Arizona. The prepetition lien amount is $26,900.00. Class 19 is impaired.

3.20    Class 20 (Toyota Financial Services)

Class 20 consists of the Allowed Secured Claim of Toyota Financial Services that is secured by a purchase money lien on a 2015 Toyota Tundra truck. The Debtor estimates that the prepetition amount owed on this claim is $29,239.34. Class 20 is impaired.

3.21    Class 21 (Empower Retirement)

Class 21 consists of the Secured Claim of Empower Retirement, which is secured by a lien on the Debtor's 401(k) Plan. Class 21 is unimpaired.

3.22    Class 22 (Unsecured Deficiency Claims):

Class 22 consists of the Unsecured Deficiency Claims. The amount of Class 22 Claims is estimated to be $634,018.49. Class 22 is impaired.

3.23    Class 23 (General Unsecured Claims):

Class 12 consists of all General Unsecured Claims including guaranty claims. The amount of Class 12 Claims is estimated to be $50,812.57. Class 23 is impaired.

3.24    Class 24 (Accent Iron Fence Company)

Class 24 consists of the expired mechanic's lien claim of Accent Iron Fence Company. The disputed prepetition lien amount is estimated to be $1,548.00. Class 24 is impaired.

**4.    TREATMENT OF ALLOWED CLAIMS**

SUMMARY: Classes 1 and 3 are unimpaired. Classes 2, and 4 through 20, and 22 through 24 are, or may be, impaired. All Classes will receive the distributions stated in this article on account of and in complete satisfaction of all such Allowed Claims (including any interest or charges accrued thereon as expressly provided for herein). Without limiting the foregoing, and effective upon the Effective Date, each Creditor and Interest holder (or the successor of such) shall be deemed to have assigned to the Debtors and all such Parties shall be deemed to have waived, relinquished, and released and all of their rights and Claims against the Debtors other than as provided for in this Plan or the Court's Order confirming this Plan.

- 8 -

The Classes will be treated as follows:

4.1     Class 1 – Administrative Claims.

Class 1 consists of all allowed Administrative Claims for actual and necessary costs and expenses of administration entitled to priority under §§ 503(b) and 507(a)(2) of the Bankruptcy Code.   This Class includes, without limitation, post-petition tax Claims, the Debtors' attorneys' fees, approved accounting fees and fees due the United States Trustee, if any.   The holders of Allowed Class 1 Claims shall be paid, in full, on the Effective Date of the Plan of Reorganization or upon such other terms as the Debtors and the holders of Allowed Class 1 Claims agree.

The Debtors estimate that Class 1 Claims will be no less than $10,000.00, subject to final approval by the Court.   To the extent the Debtors do not hold adequate funds as of the Effective Date to pay all Class 1 Claims in full, the Debtors contend that they will be able to satisfy any remaining unpaid Class 1 Claims within three months following the Effective Date.  Class 1 is unimpaired.   The Debtors expect that the following administrative Claims may be asserted:

4.1.1    United States Trustee.   The amounts due to the United States Trustee for quarterly fees are established under Federal law.   The Debtors anticipate that on the Effective Date, the only amount due to the United States Trustee will be for the then-current quarterly fees.

4.1.2    Law Office of Blake D.   Gunn.    This is the Debtor's current bankruptcy counsel.    The Debtors believe that this claim will not exceed $10,000.00, provided that Confirmation is not significantly contested.    The Debtors' counsel shall be paid from any funds on deposit with counsel, and from funds contributed by the Debtors on the Effective Date.    This Claim shall be paid on the Effective Date.

4.2     Class 2 – 11 U.S.C. § 507(a)(8) Priority Claims

The Class 2 Claims consist of all Claims which are entitled to priority treatment pursuant to 11 U.S.C. § 507(a)(8). Each holder of a Priority Claim in Class 2 is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.   Class 2 consists of various sub-classes of asserted Priority Creditor Claims. Unless otherwise specified, a holder of an Allowed Priority Claim in any of the Class 2 sub-Classes shall receive payment in full, within five (5) years of the Petition Date. Payments will

commence on the Effective Date or after Class 1 Claims are paid in full if the Debtor is unable to pay Class 1 Claims in full on the Effective Date. The Debtor will make regular payments to any creditors holding a Class 2 Claim in accordance with the provisions set forth under 11 U.S.C. §1129(a)(9)(C) so that all amounts are paid within five years of the Petition Date. The interest rate paid to Class 2 Claims shall be four percent (4%) per annum from and after the Effective Date.

4.2.1  Class 2(a) – Priority Claim of Internal Revenue Service

Class 2(a) consists of the Allowed Priority Claim of the Internal Revenue Service. To the extent a Claim exists, the holder of the Allowed Priority Class 2(a) Claim shall be paid as set forth above such that the Claimant shall be paid, in full, within five (5) years of the Petition Date. Payments to this Class shall begin after all Class 1 Claims have been paid in full and in conjunction with Class 2(b) Claims. The interest rate paid to the Allowed Class 2(a) Claim shall be four percent (4%) per annum from and after the Effective Date. The Debtor estimates that the Class 2(a) Claim will negligible. Class 2(a) is impaired.

4.2.2  Class 2(b) – Priority Claim of Maricopa County Treasurer

Class 2(b) consists of the Allowed Priority Claim of the Maricopa County Treasurer.  To the extent a Claim exists, the holder of the Allowed Priority Class 2(b) Claim shall be paid as set forth above such that the Claimant shall be paid, in full, within five (5) years of the Petition Date.  Payments to this Class shall begin after all Class 1 Claims have been paid in full and in conjunction with Class 2(a) Claims. The interest rate paid to the Allowed Class 2(a) Claim shall be four percent (4%) per annum from and after the Effective Date. The Debtor estimates that the Class 2(b) Claim will be no more than _____. The Class 2(b) Creditor holds a priming lien against the properties located in Maricopa County, Arizona. Class 2(b) is impaired.

4.2.3  Class 2(c) – Priority Claim of Hancock County Treasurer

Class 2(c) consists of the allowed claim of the Hancock County Treasurer, or such other taxing authority having taxation rights relating to the properties located in Bay Saint Louis, Mississippi.  To the extent a claim exists in this class, it shall be paid in full within five (5) years of the Petition Date.  Payments to this Class shall begin after all Class 1 Claims have been paid in full, and shall be paid simultaneously with Class 2(a) and 2(b) Claims.  The interest rate

paid to the Allowed Class 2(c) Claimant shall be four percent (4%) per annum, which shall accrue from and after the Effective Date. The Debtor estimates that the Class 2(c) Claim will not exceed one year's tax payment on the two Bay Saint Louis properties, and such amounts total no more than $1,500.00.

    4.3    <u>Class 3 – Priority (Non-Tax) Claims</u>

    Class 3 consists of those claims which are entitled to priority under §§ 507(a)(3) through 507(a)(10) of the Bankruptcy Code. The Allowed Class 3 Claim will be paid after Class 1 Claims and in conjunction with Class 2 Claims, if any. The Debtor does not believe any Class 3 Claims exist as of the Petition Date, although tenants under lease agreements may be entitled to a refund of deposits upon termination of their tenancies post-petition. The Debtor holds pre-petition funds in an amount to satisfy all deposit refund claims (to the extent such exist), and such funds are identified by the Debtor as restricted funds that are not available for general use or plan funding. Class 3 claims shall be paid as such tenancies are terminated and as such claimants become entitled to refunds under the terms of executory contracts assumed by the Debtor.

    4.4    <u>Class 4 – Secured Claim of (First Lien – 248 W. Desert Ave., Gilbert Arizona)</u>

Class 4 consists of the Allowed Secured Claim of Foxwood LLC, secured by a first position Deed of Trust against the Debtor's principal residence at 248 W. Desert Avenue, Gilbert, Arizona (the "Principal Residence"). To the extent such loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. The Class 4 Secured Claimant shall retain a lien securing its Allowed Claim. The Class 4 Claimant shall continue to receive regular monthly payments in the amounts and under the terms of the pre-bankruptcy loan documents between the Debtors and the Class 4 Claimant (or its successor), or as agreed to between the Parties. The lien securing the Class 4 Claimant's collateral shall be extinguished upon payment in full of the Class 4 Claim. Once the Class 4 Claimant's Claim has been paid, it must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien. The Debtor believes that the Class 4 Claim is valued at no more than $80,686.54. To the extent that any arrearage exists as of the Petition Date, such arrearage shall be paid in six equal monthly payments beginning on the Effective Date.

Unless the Claimant in this Class elects otherwise, the Debtor shall pay real property taxes directly to the applicable taxing authority, and shall pay property insurance premiums directly to the applicable insurance company. The Class 4 Claim is impaired.

4.5    Class 5 – Secured Claim of Citimortgage (First Lien – 1168 E. Tyson St., Gilbert Arizona)

Class 5 consists of the Claim of Citimortgage, Inc. ("Citimortgage") which is secured by a first position Deed of Trust (the "Citimortgage Lien") against the Debtor's rental property located at 1168 E. Tyson St., Gilbert, Arizona. The amount owed on the Citimortgage Lien is $126,286.21. The Debtor believes that the collateral securing the Class 5 Claim is valued at no more than $208,000.00. To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. Citimortgage shall retain a lien securing its Allowed Claim. Citimortgage shall continue to receive regular monthly payments in the amounts and under the terms of the pre-bankruptcy loan documents between the Debtors and Citimortgage, or as agreed to between the Parties. The monthly payment to Citimortgage is presently $787.22, and that amount includes an escrow impound to pay real property taxes and insurance premiums. Any prepetition arrearage owed to Citimortgage shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing Citimortgage's collateral shall be extinguished upon payment in full of the Class 5 Claim. Once Citimortgage has been paid, Citimortgage must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien.

Unless the Claimant in this Class elects otherwise, the Debtor shall continue to pay an escrow impound payment to Citimortgage from which Citimortgage shall pay real property taxes and real property insurance premiums. The Class 5 Claim is impaired.

4.6    Class 6 – Partially Secured Claim of Provident Funding (1st Position Lien – 3352 E. Powell Place, Chandler, Arizona)

Class 6 consists of the Claim of Provident Funding ("Provident") (or the current real party in interest) which is partially secured by a first position Deed of Trust (the "Provident Lien") against the rental property located at 3352 E. Powell Place, Chandler, Arizona (the "Powell

Property"). The amount owed on the Provident Lien is $343,243.19. The anticipated value, based on average price of recent comparables sold, pursuant to 11 U.S.C. § 506(a)(1) is $300,000.00. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $300,000.00 is a fair approximation of the property's value.

Deteriorating market conditions have reduced the fair market value of the Powell Property and as a result, the Provident Lien is now partially secured. Provident will be treated according to one of the following two payment alternatives, if it so chooses:

A.    Bifurcated Claim

In the event that Provident does not elect, in writing prior to approval of this Disclosure Statement, to exercise its election under 11 U.S.C. § 1111(b)(2) (see, Alternative "B" below) to have its entire Claim treated as secured, then any portion of Provident's Class 6 Claim which is above the § 506 secured value will be treated as a Class 22 Deficiency Claim. The principal and interest on the Allowed Class 6 Claim will be paid as set forth in this subsection if Provident chooses to bifurcate its Claim into an Allowed Class 6 Claim and an Allowed Class 22 Deficiency Claim.

i.    Interest on the Allowed Secured Class 6 Claim

The Allowed Class 6 Claim will accrue interest at the rate of 4.25% per annum. Interest will begin to accrue as of the Effective Date of the Plan. The interest rate will be fixed for the duration of the Plan. Interest will not be assessed to the unpaid, accrued interest.

ii.    Payments on the Allowed Secured Class 6 Claim

The Debtor estimates that Provident's Allowed Secured Class 6 Claim will equal $300,000.00. Any remaining difference between the Allowed Secured Class 6 Claim and the Claimant's proof of claim is unsecured and the Claimant will hold a Class 22 Deficiency Claim. The Debtor will commence making equal monthly payments based on the Allowed Secured Class 6 Claim to Provident on the Effective Date (the "Modified Provident Payment"). The Modified Provident Payment will be the product of the Allowed Secured Class 6 Claim, amortized over 30 years, not including tax and insurance impounds, at a fixed interest rate of

4.25% which will begin to accrue on the Effective Date. The Debtor estimates that this payment will be $1,475.82 per month. All outstanding principal and interest will be paid by the 30th anniversary of the Effective Date. The Debtor will make the Modified Provident Payment utilizing revenues received from the Powell Property, third party investments or any new/additional financing received by the Debtor following confirmation of the Plan. Full or partial payment towards satisfaction of the Provident Lien may be made at anytime without penalty.

B. Alternative Treatment - § 1111(b) Election (Fully Secured Treatment)

In the event that Provident elects to be "fully secured" by asserting an election to be treated under 11 U.S.C. § 1111(b), then Provident shall receive the alternative treatment set forth in this subsection. Provident's Allowed Class 6 Claim will receive the same payments and treatment set forth above, except the following modifications shall apply:

i. No deficiency claim

a. Provident will forego and waive any unsecured deficiency claim and shall have no Class 22 Deficiency Claim or Class 23 General Unsecured Claim.

ii. Extended Term

a. Under the § 1111(b) election, the period for Class 6 Amortized Payments shall be an additional five (5) years so that the full amount of Provident's Class 6 Claim ($343,243.19) will be treated as fully secured and amortized over thirty-five (35) years, not including taxes and insurance, at a fixed interest rate of 0.25%. Monthly payments will be $853.61 and this payment stream exceeds the present value of Provident's collateral. Any outstanding amounts owed on the principal and interest will be made on the 35th anniversary of the Effective Date.

iii. Final Payoff

a. Under the § 1111(b) election, the Allowed Class 6 Secured Claim will be deemed satisfied in full when the gross amount of distributions made to Provident under the Plan equals Provident's §1111(b) Secured Claim.

C. Miscellaneous issues concerning the Allowed Class 6 Claim

Under any of the foregoing provisions, the Allowed Class 6 Claim shall not

include any default interest, prepayment penalties, yield maintenance premiums, late charges, amounts due under any penalty rate provision or penalty provision of the Provident Loan, or attorneys' fees or costs that accrued or arise after the Filing Date. After the Effective Date, the holder of the Class 6 Allowed Secured Claim may not seek reimbursement or add to the amount of the Class 6 Claim any appraisal fees, titles costs, charges, attorneys' fees or other amounts unless there has been a default by the Reorganized Debtors with respect to the payments required under the Plan. Any and all costs, fees, late fees or charges arising or relating to events occurring prior to the Effective Date are deemed waived as of the Effective Date and are forever released unless previously agreed upon by the Parties and included as part of the Allowed Class 6 Claim.

On the Effective Date, any and all documents evidencing the Provident Loan, including, without limitation, the Provident Deed of Trust, shall be deemed amended such that the terms of the Plan will control. No additional conditions that existed prior to the Effective Date, including the filing of this Case, shall serve as a basis for asserting a default under the terms of such documents.

Unless the Claimant in this Class elects otherwise, the Debtor shall pay real property taxes directly to the applicable taxing authority, and shall pay property insurance premiums directly to the applicable insurance company. The Debtor estimates that the monthly reserve necessary to pay real property taxes is $262.19, and the amount necessary to pay insurance premiums is $39.33. The Allowed Class 6 Claim is impaired.

4.7     Class 7 – Partially Secured Claim of Wells Fargo Bank (1st Position Lien – 6088 E. Hinds Street, Bay Saint Louis, MS 39520)

Class 7 consists of the Claim of Wells Fargo ("Wells Fargo") (or the current real party in interest) which is partially secured by a first position Deed of Trust (the "WF-Hinds Lien") against the rental property located at 6088 E. Hinds Street, Bay Saint Louis, Mississippi (the "6088 Property"). The anticipated value, based on average price of recent comparables sold, pursuant to 11 U.S.C. § 506(a)(1) is $29,000.00. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $29,000.00 is a fair approximation of the property's value.

Deteriorating market conditions have reduced the fair market value of the 6088

Property and as a result, the WF-Hinds Lien is now partially secured. Wells Fargo will be treated according to one of the following two payment alternatives, if it so chooses:

A. Bifurcated Claim

In the event that Wells Fargo does not elect, in writing prior to approval of this Disclosure Statement, to exercise its election under 11 U.S.C. § 1111(b)(2) (see, Alternative "B" below) to have its entire Claim treated as secured, then any portion of Wells Fargo's Class 7 Claim which is above the §506 secured value will be treated as a Class 22 Deficiency Claim. The principal and interest on the Allowed Class 7 Claim will be paid as set forth in this subsection if Wells Fargo chooses to bifurcate its Claim into an Allowed Class 7 Claim and an Allowed Class 22 Deficiency Claim.

iii. Interest on the Allowed Secured Class 7 Claim

The Allowed Class 7 Claim will accrue interest at the rate of 4.25% per annum. Interest will begin to accrue as of the Effective Date of the Plan. The interest rate will be fixed for the duration of the Plan. Interest will not be assessed to the unpaid, accrued interest.

iv. Payments on the Allowed Secured Class 7 Claim

The Debtor estimates that Wells Fargo's Allowed Secured Class 7 Claim will equal $29,000.00. Any remaining difference between the Allowed Secured Class 7 Claim and the Claimant's proof of claim is unsecured and the Claimant will hold a Class 22 Deficiency Claim. The Debtors will commence making equal monthly payments based on the Allowed Secured Class 7 Claim to Wells Fargo on the Effective Date (the "Modified Wells Fargo Payment"). The Modified Wells Fargo Payment will be the product of the Allowed Secured Class 7 Claim, amortized over 30 years, not including tax and insurance impounds, at a fixed interest rate of 4.25% which will begin to accrue on the Effective Date. The Debtor estimates that this payment will be $142.66 per month. All outstanding principal and interest will be paid by the 30th anniversary of the Effective Date. The Debtors will make the Modified Wells Fargo Payment utilizing revenues received from the 6088 Property, third party investments or any new/additional financing received by the Debtors following confirmation of the Plan. Full or partial payment towards satisfaction of the WF-Hinds Lien may be made at anytime without penalty.

B.    Alternative Treatment - § 1111(b) Election (Fully Secured Treatment)

In the event that Wells Fargo elects to be "fully secured" by asserting an election to be treated under 11 U.S.C. § 1111(b), then the Debtor shall surrender the collateral securing the Class 7 Claim. If the Debtor surrenders the collateral securing the Class 7 Claim, the Class 7 Claimant shall have no further claim against the Debtor or the Debtor's estate.

C.    Miscellaneous issues concerning the Allowed Class 7 Claim

Under any of the foregoing provisions, the Allowed Class 7 Claim shall not include any default interest, prepayment penalties, yield maintenance premiums, late charges, amounts due under any penalty rate provision or penalty provision of the Wells Fargo Loan, or attorneys' fees or costs that accrued or arise after the Filing Date. After the Effective Date, the holder of the Class 7 Allowed Secured Claim may not seek reimbursement or add to the amount of the Class 7 Claim any appraisal fees, titles costs, charges, attorneys' fees or other amounts unless there has been a default by the Reorganized Debtors with respect to the payments required under the Plan. Any and all costs, fees, late fees or charges arising or relating to events occurring prior to the Effective Date are deemed waived as of the Effective Date and are forever released unless previously agreed upon by the Parties and included as part of the Allowed Class 7 Claim.

On the Effective Date, any and all documents evidencing the Wells Fargo Loan, including, without limitation, the Wells Fargo Deed of Trust, shall be deemed amended such that the terms of the Plan will control. No additional conditions that existed prior to the Effective Date, including the filing of this Case, shall serve as a basis for asserting a default under the terms of such documents.

Unless the Claimant in this Class elects otherwise, the Debtor shall pay real property taxes directly to the applicable taxing authority, and shall pay property insurance premiums directly to the applicable insurance company. The Debtor estimates that the monthly reserve necessary to pay real property taxes is $58.66, and the amount necessary to pay insurance premiums is $262.71. The Allowed Class 7 Claim is impaired.

4.8    Class 8 – Partially Secured Claim of Wells Fargo (1st Lien – 6092 E. Hinds Street, Bay Saint Louis, MS.)

Class 8 consists of the Claim of Wells Fargo ("Wells Fargo") (or the current real

party in interest) which is partially secured by a first position Deed of Trust (the "WF-6092 Hinds Lien") against the rental property located at 6092 E. Hinds Street, Bay Saint Louis, Mississippi (the "6092 Property"). The anticipated value, based on average price of recent comparables sold, pursuant to 11 U.S.C. § 506(a)(1) is $25,000.00. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $25,000.00 is a fair approximation of the property's value.

The 6092 Hinds property will be sold in a consensual "short sale" either prior to, or shortly after, the effective date. The Class 8 Claimant shall have no further claim against the Debtor or the Debtor's estate and shall not retain a deficiency claim or other claim in this case. Class 8 is impaired under the Plan.

4.9    <u>Class 9 - Claim of Wells Fargo Bank (1st Lien – 8509 Bonanza St., Aubrey, Texas.)</u>

Class 9 consists of the Claim of Wells Fargo Bank ("Wells Fargo") which is secured by a first position Deed of Trust (the "Wells Fargo-8509 Lien") against the Debtor's rental property located at 8509 Bonanza Street, Aubrey, Texas. The amount owed on the Wells Fargo-8509 Lien is approximately $149,319.01. The Debtor believes that the collateral securing the Class 9 Claim is valued at no more than $165,0000. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $165,000.00 is a fair approximation of the property's value.

To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. Wells Fargo shall retain a lien securing its Allowed Claim. Wells Fargo shall continue to receive regular monthly payments in the amounts and under the terms of the pre-bankruptcy loan documents between the Debtor and Wells Fargo, or as agreed to between the Parties. The amount of the regular monthly payment, including the insurance and tax impound amounts is $1,358.21. Any prepetition arrearage owed to Wells Fargo shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing Well Fargo's collateral shall be extinguished upon payment in full of the Class 9 Claim. Once Wells Fargo has been paid, Wells Fargo must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien.

Unless the Claimant in this Class elects otherwise, the Debtor shall continue paying a tax and insurance impound to the Class 9 Claimant. The Class 9 Claim is impaired.

4.10 <u>Class 10 - Claim of Wells Fargo Bank (1st Lien – 8513 Bonanza St., Aubrey, Texas.)</u>

Class 10 consists of the Claim of Wells Fargo Bank ("Wells Fargo") which is secured by a first position Deed of Trust (the "Wells Fargo-8513 Lien") against the Debtor's rental property located at 8513 Bonanza Street, Aubrey, Texas. The amount owed on the Wells Fargo-8513 Lien is approximately $132,889.07. The Debtor believes that the collateral securing the Class 10 Claim is valued at no more than $146,000.00. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $146,000.00 is a fair approximation of the property's value.

To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. Wells Fargo shall retain a lien securing its Allowed Claim. Wells Fargo shall continue to receive regular monthly payments in the amounts and under the terms of the pre-bankruptcy loan documents between the Debtor and Wells Fargo, or as agreed to between the Parties. The amount of the regular monthly payment, including the tax and insurance impound, is $1,089.67. Any prepetition arrearage owed to Wells Fargo shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing Well Fargo's collateral shall be extinguished upon payment in full of the Class 10 Claim. Once Wells Fargo has been paid, Wells Fargo must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien.

Unless the Claimant in this Class elects otherwise, the Debtor shall continue paying a tax and insurance impound to the Class 10 Claimant. The Class 10 Claim is impaired.

4.11 <u>Class 11—Secured Claim of Bank of America (818 S. Westwood Drive #218, Mesa, Arizona)</u>

Class 11 consists of the Claim of Bank of America ("BofA") which is secured by a first position Deed of Trust (the "BofA Lien") against the Debtor's rental property located at 818 S. Westwood Drive, #218, Mesa, Arizona. The amount owed on the BofA Lien is approximately

$27,098.27. The Debtor believes that the collateral securing the Class 11 Claim is valued at no more than $71,000.00. To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. BofA shall retain a lien securing its Allowed Claim. The Debtor shall pay BofA the full amount of its claim over 20 years with interest on its allowed secured claim at the rate of 4.25% per annum. The monthly payment to BofA shall be $167.80, which amount includes a real property tax and insurance premium impound. Any prepetition arrearage owed to BofA shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing BofA collateral shall be extinguished upon payment in full of the Class 11 Claim. Once BofA has been paid, BofA must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien.

Unless the Claimant in this Class elects otherwise, the Debtor shall continue to pay BofA real property tax and insurance premium impounds with his regular monthly payment. The Class 11 Claim is impaired.

4.12 Class 12—Secured Claim of Nationstar (2831 E. Southern Ave., #125, Mesa, Arizona)

Class 12 consists of the Claim of Nationstar Mortgage ("Nationstar") which is secured by a first position Deed of Trust (the "Nationstar Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #125, Mesa, Arizona ("2831-125 Property"). The amount owed on the Nationstar Lien is $70,175.05. The Debtor believes that the collateral securing the Class 12 Claim is valued at no more than $70,000.00. Furthermore, the Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $70,000.00 is a fair approximation of the property's value. To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. Nationstar shall retain a lien securing its Allowed Claim. Deteriorating market conditions have reduced the fair market value of the property and as a result, the Nationstar Lien is now partially secured. Nationstar will be treated according to one of the following two payment alternatives, if it so chooses:

A. Bifurcated Claim

- 20 -

In the event that Nationstar does not elect, in writing prior to approval of this Disclosure Statement, to exercise its election under 11 U.S.C. § 1111(b)(2) (see, Alternative "B" below) to have its entire Claim treated as secured, then any portion of Nationstar's Class 12 Claim which is above the § 506 secured value will be treated as a Class 22 Deficiency Claim. The principal and interest on the Allowed Class 12 Claim will be paid as set forth in this subsection if Nationstar chooses to bifurcate its Claim into an Allowed Class 12 Claim and an Allowed Class 22 Deficiency Claim.

i.     Interest on the Allowed Secured Class 12 Claim

The Allowed Class 12 Claim will accrue interest at the rate of 4.25% per annum. Interest will begin to accrue as of the Effective Date of the Plan. The interest rate will be fixed for the duration of the Plan. Interest will not be assessed to the unpaid, accrued interest.

ii.     Payments on the Allowed Secured Class 12 Claim

The Debtor estimates that Nationstar's Allowed Secured Class 12 Claim will equal $70,000.00. Any remaining difference between the Allowed Secured Class 12 Claim and the Claimant's proof of claim is unsecured and the Claimant will hold a Class 22 Deficiency Claim. The Debtors will commence making equal monthly payments based on the Allowed Secured Class 12 Claim to Nationstar on the Effective Date (the "Modified Nationstar Payment"). The Modified Nationstar Payment will be the product of the Allowed Secured Class 12 Claim, amortized over 30 years, not including tax and insurance impounds, at a fixed interest rate of 4.25% which will begin to accrue on the Effective Date. The Debtor estimates that this payment will be $344.36 per month. All outstanding principal and interest will be paid by the 30th anniversary of the Effective Date. The Debtor will make the Modified Nationstar Payment utilizing revenues received from the 2831-125 Property, third party investments or any new/additional financing received by the Debtor following confirmation of the Plan. Full or partial payment towards satisfaction of the Nationstar Lien may be made at anytime without penalty.

iii.     Tax and Insurance Payments

Unless the Claimant in this Class elects otherwise, the Debtor shall pay real property taxes directly to the applicable taxing authority. The estimated monthly payments

for taxes is $49.94. Real property insurance is paid by the homeowner's association in which the property is located.

B.    Alternative Treatment - § 1111(b) Election (Fully Secured Treatment)

In the event that Nationstar elects to be "fully secured" by asserting an election to be treated under 11 U.S.C. § 1111(b), then Nationstar shall receive the alternative treatment set forth in this subsection. Nationstar's Allowed Class 12 Claim will receive the same payments and treatment set forth above, except the following modifications shall apply:

iv.    No deficiency claim

Nationstar will forego and waive any unsecured deficiency claim and shall have no Class 22 Deficiency Claim.

v.    Extended Term

Under the § 1111(b) election, the period for Class 12 Amortized Payments shall be an additional one year so that the full amount of Nationstar's Class 12 Claim ($70,175.00) will be treated as fully secured and amortized over thirty-one (31) years, not including taxes and insurance, at a fixed interest rate of 0.25%. Monthly payments will be $196.07 and this payment stream exceeds the present value of Nationstar's collateral. Any outstanding amounts owed on the principal and interest will be made on the 31st anniversary of the Effective Date.

vi.    Final Payoff

Under the § 1111(b) election, the Allowed Class 12 Secured Claim will be deemed satisfied in full when the gross amount of distributions made to Nationstar under the Plan equals Nationstar's §1111(b) Secured Claim.

C.    Miscellaneous issues concerning the Allowed Class 12 Claim

Under any of the foregoing provisions, the Allowed Class 12 Claim shall not include any default interest, prepayment penalties, yield maintenance premiums, late charges, amounts due under any penalty rate provision or penalty provision of the Nationstar Loan, or attorneys' fees or costs that accrued or arise after the Filing Date. After the Effective Date, the holder of the Class 12 Allowed Secured Claim may not seek reimbursement or add to the amount of the Class 12 Claim any appraisal fees, titles costs, charges, attorneys' fees or other amounts unless

there has been a default by the Reorganized Debtors with respect to the payments required under the Plan. Any and all costs, fees, late fees or charges arising or relating to events occurring prior to the Effective Date are deemed waived as of the Effective Date and are forever released unless previously agreed upon by the Parties and included as part of the Allowed Class 12 Claim.

On the Effective Date, any and all documents evidencing the Nationstar Loan, including, without limitation, the Nationstar Deed of Trust, shall be deemed amended such that the terms of the Plan will control. No additional conditions that existed prior to the Effective Date, including the filing of this Case, shall serve as a basis for asserting a default under the terms of such documents.

Any prepetition arrearage owed to Nationstar shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing Nationstar's claim shall be extinguished upon payment in full of the Class 12 Claim. Once Nationstar has been paid, Nationstar must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien. The Class 12 Claim is impaired.

### 4.13    Class 13—Secured Claim of Bank of America (2831 E. Southern Ave., #122, Mesa, AZ)

Class 13 consists of the Claim of Bank of America ("BofA") which is secured by a first position Deed of Trust (the "BofA Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #122, Mesa, Arizona ("2831-122 Property"). The amount owed on the BofA Lien is $71,407.49. The Debtor believes that the collateral securing the Class 13 Claim is valued at no more than $70,000.00. The Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $70,000.00 is a fair approximation of the property's value.

To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. BofA shall retain a lien securing its Allowed Claim.

Deteriorating market conditions have reduced the fair market value of the property and as a result, the BofA Lien is now partially secured. BofA will be treated according to one of the following two payment alternatives, if it so chooses:

A.    Bifurcated Claim

In the event that BofA does not elect, in writing prior to approval of this Disclosure Statement, to exercise its election under 11 U.S.C. § 1111(b)(2) (see, Alternative "B" below) to have its entire Claim treated as secured, then any portion of BofA's Class 13 Claim which is above the § 506 secured value will be treated as a Class 22 Deficiency Claim. The principal and interest on the Allowed Class 13 Claim will be paid as set forth in this subsection if BofA chooses to bifurcate its Claim into an Allowed Class 12 Claim and an Allowed Class 22 Deficiency Claim.

i.    Interest on the Allowed Secured Class 13 Claim

The Allowed Class 13 Claim will accrue interest at the rate of 4.25% per annum. Interest will begin to accrue as of the Effective Date of the Plan. The interest rate will be fixed for the duration of the Plan. Interest will not be assessed to the unpaid, accrued interest.

ii.    Payments on the Allowed Secured Class 13 Claim

The Debtor estimates that BofA's Allowed Secured Class 13 Claim will equal $70,000.00. Any remaining difference between the Allowed Secured Class 13 Claim and the Claimant's proof of claim is unsecured and the Claimant will hold a Class 22 Deficiency Claim. The Debtors will commence making equal monthly payments based on the Allowed Secured Class 13 Claim to Nationstar on the Effective Date (the "Modified BofA Payment"). The Modified BofA Payment will be the product of the Allowed Secured Class 13 Claim, amortized over 30 years, not including tax and insurance impounds, at a fixed interest rate of 4.25% which will begin to accrue on the Effective Date. The Debtor estimates that this payment will be $344.36 per month. All outstanding principal and interest will be paid by the 30th anniversary of the Effective Date. The Debtors will make the Modified BofA Payment utilizing revenues received from the 2831-122 Property, third party investments or any new/additional financing received by the Debtors following confirmation of the Plan. Full or partial payment towards satisfaction of the BofA Lien may be made at anytime without penalty.

iii.    Tax and Insurance Payments

Unless the Claimant in this Class elects otherwise, the Debtor shall pay real property taxes directly to the applicable taxing authority. The monthly tax impound is

estimated to be $49.44. Real property insurance is paid as part of the monthly homeowner association dues.

B. Alternative Treatment - § 1111(b) Election (Fully Secured Treatment)

In the event that BofA elects to be "fully secured" by asserting an election to be treated under 11 U.S.C. § 1111(b), then BofA shall receive the alternative treatment set forth in this subsection. BofA's Allowed Class 13 Claim will receive the same payments and treatment set forth above, except the following modifications shall apply:

ii. No deficiency claim

BofA will forego and waive any unsecured deficiency claim and shall have no Class 22 Deficiency Claim.

iii. Extended Term

Under the § 1111(b) election, the period for Class 13 Amortized Payments shall be an additional one (1) year so that the full amount of BofA's Class 13 Claim ($70,407.49) will be treated as fully secured and amortized over thirty-one (31) years, not including taxes and insurance, at a fixed interest rate of 0.25%. Monthly payments will be $196.72 and this payment stream exceeds the present value of BofA's collateral. Any outstanding amounts owed on the principal and interest will be made on the 31st anniversary of the Effective Date.

iv. Final Payoff

Under the § 1111(b) election, the Allowed Class 13 Secured Claim will be deemed satisfied in full when the gross amount of distributions made to BofA under the Plan equals BofA's §1111(b) Secured Claim.

C. Miscellaneous issues concerning the Allowed Class 13 Claim

Under any of the foregoing provisions, the Allowed Class 13 Claim shall not include any default interest, prepayment penalties, yield maintenance premiums, late charges, amounts due under any penalty rate provision or penalty provision of the BofA Loan, or attorneys' fees or costs that accrued or arise after the Filing Date. After the Effective Date, the holder of the Class 13 Allowed Secured Claim may not seek reimbursement or add to the amount of the Class 13 Claim any appraisal fees, titles costs, charges, attorneys' fees or other amounts unless there has

been a default by the Reorganized Debtors with respect to the payments required under the Plan. Any and all costs, fees, late fees or charges arising or relating to events occurring prior to the Effective Date are deemed waived as of the Effective Date and are forever released unless previously agreed upon by the Parties and included as part of the Allowed Class 13 Claim.

On the Effective Date, any and all documents evidencing the BofA Loan, including, without limitation, the BofA Deed of Trust, shall be deemed amended such that the terms of the Plan will control. No additional conditions that existed prior to the Effective Date, including the filing of this Case, shall serve as a basis for asserting a default under the terms of such documents.

Any prepetition arrearage owed to BofA shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing BofA's claim shall be extinguished upon payment in full of the Class 13 Claim. Once BofA has been paid, BofA must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien. The Class 13 Claim is impaired.

.

### 4.14   Class 14—Secured Claim of Nationstar Mortgage (2831 E. Southern Ave. #211, Mesa, Arizona)

Class 14 consists of the Claim of Nationstar Mortgage ("Nationstar") which is partiallysecured by a first position Deed of Trust (the "Nationstar Lien") against the Debtor's rental property located at 2831 E. Southern Ave., #211, Mesa, Arizona ("2831-211 Property"). The amount owed on the Nationstar Lien is $93,789.68. The Debtor believes that the collateral securing the Class 14 Claim is valued at no more than $93,000.00. The Debtor has conducted his internal valuation analysis from an income and capitalization rate approach, and believes that $93,000.00 is a fair approximation of the property's value.To the extent prepetition loan documents provide for default resulting from Debtors' bankruptcy filing(s), such default shall not be enforceable. Nationstar shall retain a lien securing its Allowed Claim.

Deteriorating market conditions have reduced the fair market value of the property and as a result, the Nationstar Lien is now partially secured. Nationstar will be treated according to one of the following two payment alternatives, if it so chooses:

### A. Bifurcated Claim

In the event that Nationstar does not elect, in writing prior to approval of this Disclosure Statement, to exercise its election under 11 U.S.C. § 1111(b)(2) (see, Alternative "B" below) to have its entire Claim treated as secured, then any portion of Nationstar's Class 14 Claim which is above the § 506 secured value will be treated as a Class 22 Deficiency Claim. The principal and interest on the Allowed Class 13 Claim will be paid as set forth in this subsection if Nationstar chooses to bifurcate its Claim into an Allowed Class 14 Claim and an Allowed Class 22 Deficiency Claim.

#### i. Interest on the Allowed Secured Class 14 Claim

The Allowed Class 14 Claim will accrue interest at the rate of 4.25% per annum. Interest will begin to accrue as of the Effective Date of the Plan. The interest rate will be fixed for the duration of the Plan. Interest will not be assessed to the unpaid, accrued interest.

#### ii. Payments on the Allowed Secured Class 14 Claim

The Debtor estimates that Nationstar's Allowed Secured Class 14 Claim will equal $93,000.00. Any remaining difference between the Allowed Secured Class 14 Claim and the Claimant's proof of claim is unsecured and the Claimant will hold a Class 22 Deficiency Claim. The Debtors will commence making equal monthly payments based on the Allowed Secured Class 14 Claim to Nationstar on the Effective Date (the "Modified Nationstar Payment"). The Modified Nationstar Payment will be the product of the Allowed Secured Class 14 Claim, amortized over 30 years, not including tax and insurance impounds, at a fixed interest rate of 4.25% which will begin to accrue on the Effective Date. The Debtor estimates that this payment will be $457.50 per month. All outstanding principal and interest will be paid by the 30th anniversary of the Effective Date. The Debtors will make the Modified Nationstar Payment utilizing revenues received from the 2831-211 Property, third party investments or any new/additional financing received by the Debtors following confirmation of the Plan. Full or partial payment towards satisfaction of the Nationstar Lien may be made at anytime without penalty.

#### iii. Tax and Insurance Payments

Unless the Claimant in this Class elects otherwise, the Debtor shall

pay real property taxes directly to the applicable taxing authority, and shall pay property insurance premiums directly to the applicable insurance company.

> **B.** Alternative Treatment - § 1111(b) Election (Fully Secured Treatment)

In the event that Nationstar elects to be "fully secured" by asserting an election to be treated under 11 U.S.C. § 1111(b), then Nationstar shall receive the alternative treatment set forth in this subsection. Nationstar's Allowed Class 14 Claim will receive the same payments and treatment set forth above, except the following modifications shall apply:

> **i.** No deficiency claim

Nationstar will forego and waive any unsecured deficiency claim and shall have no Class 22 Deficiency Claim.

> **ii.** Extended Term

Under the § 1111(b) election, the period for Class 14 Amortized Payments shall be an additional one (1) year so that the full amount of Nationstar's Class 14 Claim ($93,789.68) will be treated as fully secured and amortized over thirty-one (31) years, not including taxes and insurance, at a fixed interest rate of 0.25%. Monthly payments will be $262.04 and this payment stream exceeds the present value of Nationstar's collateral. Any outstanding amounts owed on the principal and interest will be made on the 31st anniversary of the Effective Date.

> **v.** Final Payoff

Under the § 1111(b) election, the Allowed Class 14 Secured Claim will be deemed satisfied in full when the gross amount of distributions made to Nationstar under the Plan equals Nationstar's §1111(b) Secured Claim..

> **C.** Miscellaneous issues concerning the Allowed Class 14 Claim

Under any of the foregoing provisions, the Allowed Class 14 Claim shall not include any default interest, prepayment penalties, yield maintenance premiums, late charges, amounts due under any penalty rate provision or penalty provision of the Nationstar Loan, or attorneys' fees or costs that accrued or arise after the Filing Date. After the Effective Date, the holder of the Class 14 Allowed Secured Claim may not seek reimbursement or add to the amount of the Class 14 Claim any appraisal fees, titles costs, charges, attorneys' fees or other amounts unless

there has been a default by the Reorganized Debtors with respect to the payments required under the Plan. Any and all costs, fees, late fees or charges arising or relating to events occurring prior to the Effective Date are deemed waived as of the Effective Date and are forever released unless previously agreed upon by the Parties and included as part of the Allowed Class 14 Claim.

On the Effective Date, any and all documents evidencing the Nationstar Loan, including, without limitation, the Nationstar Deed of Trust, shall be deemed amended such that the terms of the Plan will control. No additional conditions that existed prior to the Effective Date, including the filing of this Case, shall serve as a basis for asserting a default under the terms of such documents.

Any prepetition arrearage owed to Nationstar shall be paid in 24 equal monthly installment payments beginning on the Effective Date. The lien securing Nationstar's claim shall be extinguished upon payment in full of the Class 14 Claim. Once Nationstar has been paid, Nationstar must promptly file or record notice of the release of its lien or otherwise effectuate release of its lien. The Class 14 Claim is impaired.

4.15    Class 15—Partially Secured Claim of Bank of America (Second Position Lien 1168 E. Tyson St., Gilbert Arizona.

Class 15 consists of the partially secured claim of Bank of America arising from a second position deed of trust on real property located at 1168 E. Tyson St., Gilbert, Arizona, and the pre-petition lien amount is $201,940.95. The value of the collateral partially securing the Class 15 Claim is $208,000.00, while senior liens are approximately $126,000.00. Thus the Class 15 Claim is undersecured. The Allowed Class 15 Claim shall be $82,000.00, and Bank of America will retain a lien in that amount. The Allowed Class 15 Claim shall be paid to Bank of America over 30 years, with interest at the rate of 4.25% per annum. The monthly payment to Bank of America shall be $403.39. This Class is impaired under the Plan.

4.16    Class 16—Partially Secured Claim of Wells Fargo Bank (Second Position Lien, 818 S. Westwood Dr., #218, Mesa, Arizona)

Class 16 consists of the partially secured claim of Wells Fargo Bank arising from a second position deed of trust on real property located at 818 S. Westwood Dr., #218, Mesa, Arizona. The prepetition lien amount is $102,532.00. The value of the collateral partially securing

the Wells Fargo claim is $71,000.00, while senior liens are $27,098.00. Thus, the Class 16 claim is undersecured. The Allowed Class 15 Claim shall be $43,901.00, and Wells Fargo shall retain a lien in that amount. The Allowed Class 15 Claim shall be paid over 30 years, with interest at the rate of 4.25% per annum. The monthly payment to Wells Fargo shall be $215.97. This Claim is impaired under the Plan.

4.17    Class 17—Wholly Unsecured Lien Claim of Wells Fargo Bank (Second Position Lien, 2831 E. Southern Ave., #125, Mesa, Arizona)

Class 17 consists of the unsecured lien claim of Wells Fargo Bank arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #125, Mesa, Arizona. The prepetition lien amount is $98,572.00.00. The value of the collateral partially securing the Wells Fargo claim is $70,000.00, while senior liens are $70,000.00. Thus, the Class 17 claim is wholly unsecured. Wells Fargo shall not retain a lien under the Plan and shall receive no payments as a secured creditor. Instead, Wells Fargo shall be allowed a Class 23 General Unsecured Claim in the amount of $98,572.00. This Claim is impaired under the Plan.

4.18    Class 18—Wholly Unsecured Lien Claim of Bank of America (Second Position Lien, 2831 E. Southern Avenue #211, Mesa, Arizona)

Class 18 consists of the unsecured lien claim of Bank of America arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #211, Mesa, Arizona. The prepetition lien amount is $94,482.76. The value of the collateral partially securing the Bank of America claim is $93,000.00, while senior liens are $93,000.00. Thus, the Class 18 claim is wholly unsecured. Bank of America shall not retain a lien under the Plan and shall receive no payments as a secured creditor. Instead, Bank of America shall be allowed a Class 23 General Unsecured Claim in the amount of $94,482.76. This Claim is impaired under the Plan.

4.19    Class 19—Wholly Unsecured lien Claim of Bank of America (Second Position Lien 2831 E. Southern Avenue #122, Mesa, Arizona)

Class 19 consists of the unsecured lien claim of Bank of America arising from a second position deed of trust on real property located at 2831 E. Southern Ave., #211, Mesa, Arizona. The prepetition lien amount is $26,900.00. The value of the collateral partially securing the Bank of

America claim is $70,000.00, while senior liens are $70,000.00. Thus, the Class 19 claim is wholly unsecured. Bank of America shall not retain a lien under the Plan and shall receive no payments as a secured creditor. Instead, Bank of America shall be allowed a Class 23 General Unsecured Claim in the amount of $27,346.20. This Claim is impaired under the Plan.

### 4.20    Class 20—Secured Claim of Toyota Financial Services

Class 20 consists of the Secured Claim of Toyota Financial Services secured by a purchase money loan on a 2015 Toyota Tacoma. The estimated amount of Toyota's claim is $29,239.43. The value of the collateral securing the Class 20 Claim is estimated to be $23,000.00. Toyota shall be paid $23,000.00, with interest at the rate of 4.24%, in equal monthly payments over 60 months beginning on the Effective Date. The monthly payment to Toyota shall be $426.08. The remainder of Toyota's claim shall be treated as a Class 23 General Unsecured Claim. This Class is impaired.

### 4.21    Class 21—Secured Claim of Empower Retirement 401(k) Loan.

Class 21 consists of the Secured Claim of Empower Retirement, which is secured by a lien on the Debtor's 401(k) Plan. The Class 21 Claim shall be paid according to the terms of the pre-petition loan agreement, without modification. Class 21 is unimpaired.

### 4.22    Class 22 – Unsecured Deficiency Claims

Class 22 consists of Unsecured Deficiency Claims. The holder of a Class 22 Claim will receive a prorata share of the amount allocated to the Class 23 General Unsecured Claims. Such amount shall be paid pro rata, without interest, with payments being made pursuant to the payment schedule listed in Section 5.1 below. The Class 22 Claim shall not include any interest charges, fees, or other costs incurred or assessed after the Petition Date, through and including the Effective Date and thereafter. The Class 22 Claims are unknown at this time. Class 22 is impaired

### 4.23    Class 23– General Unsecured Claims

Class 23 consists of all remaining Unsecured Claims. The holders of Allowed Class 23 Claims will receive a portion of the approximately $5,000.00 being paid to Unsecured Claims and be paid, pro rata, without interest, with payments being made pursuant to the payment schedule listed in Section 5.1 below. The Class 23 Claims shall not include any interest charges, fees, or

other costs incurred or assessed after the Petition Date through and including the Effective Date and thereafter. The Class 23 Claims are unknown at this time. Class 23 is impaired.

4.24    Class 24—Accent Iron Fence Company

Class 24 consists of the expired mechanic's lien claim of Accent Iron Fence Company.   The disputed prepetition lien amount is estimated to be $1,548.00.   The Class 24 claim shall be treated as a Class 23 General Unsecured Claim and Accent Iron Fence Company shall not retain a lien.   The order confirming the Plan shall operate as a release of such lien claim.  Class 24 is impaired under the Plan.

## 5.    IMPLEMENTATION OF THE PLAN

5.1    <u>Plan Fund</u>.

A bank account ("Plan Account") will be established for the deposit of all funds ("Plan Fund") to be received as a result of payments from the Debtor in an amount necessary to satisfy the terms of the Plan.    The Plan Account will be a combined money market checking/savings account which will accrue some interest on the deposited funds without significant risk, and will be in an FDIC insured institution listed as a qualified financial depository for debtor-in-possession funds by the Office of the U.S.  Trustee.

The Debtor will make payments to Unsecured Creditor Classes over the course of sixty months.   The Debtor will continue to service Secured obligations pursuant to terms contained in this Plan and the accompanying Disclosure Statement.   The Plan will be funded with the Debtors contributing $117.00 per month into the Plan Fund, as such funds are available.   This amount will be generated from the Debtor's post-petition income and savings and any excess cash flow that the Debtors accumulate through the life of the Plan.

The Debtors shall act as the Disbursing Agent under the Plan.    See, §5.2 below. The Debtors estimate that Class 1 Claims will be no less than $10,000.00.   The Debtors estimate that the Class 2 Claim will be approximately $1,500.00, plus accruing interest.    The Debtors propose to pay the Class 22 Unsecured Deficiency Claims and Class 23 General Unsecured Claims a pro-rata share of approximately $7,020.00.  The sum of the payment to Class 22 and Class 23 exceeds the amount set forth in the Debtors' liquidation analysis after payments to Administrative

and Priority Claims if this Case were converted to a Chapter 7 proceeding. In the event the Debtors' Administrative and Priority Claims are greater than the estimated amounts contained in this Plan, the Debtors will pay all approved Class 1 and Class 2 Claims first before making a distribution to Classes 22 and Class 23. In no event, will the amount paid to Classes 22 and 23 be less than the Debtors Liquidation Equity, which is $0.00. Accordingly, the Debtors will pay $7,020.00 over the life of the Plan in addition to the outstanding secured obligations owed to Class 4 through 21 Claimants and Class 1 and Class 2 Claimants.

Payments will be distributed on the Effective Date to Class 1 Claims. The Debtors will commence making regular monthly payments to Classes 2(a) (including interest at 4% per annum) following full satisfaction of all Class 1 Administrative Claims so that Class 2(a), 2(b), and 2(c) Claims are paid in full within five (5) years of the Petition Date. If the Debtor has sufficient cash on hand after paying in full Class 1 Claims, the Debtor may elect to pay the Class 2(a) Claim in full on the Effective Date. Debt Service to Classes 4-21 will commence on the Effective Date and will be determined once each Secured Class has decided whether or not to make their § 1111(b) election (if allowed). Payments to Classes 22 and 23 will commence on the first month following satisfaction (in full) of the Class 1 Claim, and simultaneously with the Class 2(a), Class 2(b) and Class 2(c) Claims (the "Unsecured Claim Initial Distribution"). Following the Unsecured Claim Initial Distribution, the Debtor will continue to make quarterly payments to Class 22 and Class 23 Claims pursuant to the terms of the Disclosure Statement and this proposed Plan of Reorganization, to the extent such funds are available.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to implement or incorporate the terms of the Plan, and such entity fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of this Plan and the Confirmation Order with the appropriate governmental agency, and such recordation shall constitute the lien release and creation of the necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, he may obtain a further Order from the Court which may be recorded in order to implement the terms of the Plan.

5.2    Disbursing Agent.

The Debtor shall act as the Disbursing Agent under this Plan.    All payments on Allowed Secured Claims arising from the sale of real property of the Debtor shall be made directly by the escrow officer designated by the parties to the transaction or by another duly qualified escrow agent.    All payments on all other Allowed Claims from the Plan Fund shall be made by the Disbursing Agent appointed hereunder.

5.3    De Minimus Distributions and Returned Payments.

No distributions of cash shall be made under the Plan in an amount less than $10. All cash not distributed pursuant to this provision shall vest in the Debtor free of any Claim.    All distributions under the Plan which are returned by the Post Office undelivered or which cannot be delivered due to the lack of a current address will be retained by the Debtors in trust for the distributee.    After six months, the unclaimed distributions will vest in the Debtor, free of any claim.

## 6.    EFFECT OF CONFIRMATION

The Court's Order Confirming the Plan (the "Confirmation Order") does not act as a Discharge of any and all debts of the Debtors that arose at any time before the entry of the Confirmation Order, including, but not limited to, all principal and any and all interest accrued thereon, pursuant to 11 U.S.C.   § 1141(d)(1).   The Debtor's Discharge will be effective upon completion of the Plan and the Court entering an appropriate order.   The Debtor's Discharge, upon being entered by the Court, shall be effective as to each Claim, regardless of whether a Proof of Claim thereof was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.

## 7.    REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Debtors shall be vested with all of the property of their estate free and clear of all Claims, Liens, Charges and other Interests of Creditors not previsouly addressed in this Plan or Disclosure Statement which arose prior to the Petition Date.

**The Debtor has determined that several lien claims are unsecured claims or undersecured claims pursuant to 11 U.S.C. §506.   The Debtor's Plan proposes to extinguish**

unsecured liens and allow a partial retention of undersecured liens. **Under 11 U.S.C. §1141(C), any pre-petition lien claim that is not preserved under the Plan is extinguished, and property revests in the Debtor free and clear of such lien**. **If claimants holding unsecured lien claims under the Plan or undersecured lien claims under the Plan do not have their claims adjudicated to be fully or partially secured, such claimants shall only retain a lien to the extent expressly allowed under the Plan. Confirmation of the Plan shall have the effect of immediately releasing all liens identified as unsecured in Article 4 of the Disclosure Statement and Section 4 of this Plan, and shall have the effect of reducing the lien retained by an undersecured creditor to the amount allowed in Section 4 of this Plan. The Debtor may record the order confirming the Plan, and such order shall operate as a lawful and valid and complete release of the all liens identified as unsecured liens. Recordation of the confirmation order shall also operate as a partial release of all liens identified in Section 4 of this Plan as undersecured liens. The partial lien retained by undersecured creditors shall be equal to the amount of the lien granted to such creditor in Section 4 of this Plan.**

**8.    DEFAULT**

If the Debtors are unable to perform the terms and conditions of this Plan, then they will be in default. Any Creditor may seek to enforce the Plan. Before doing so, however, a Creditor must first provide at least 30 days notice to the Debtors specifying the nature of the alleged default and providing the Debtors a 30-day period to cure such default. Any such notice shall be in writing and sent to the Debtors by certified mail at the address on file with the Clerk of the Court with a copy by certified mail to:

> Blake D. Gunn
> P.O. Box 22146
> Mesa, AZ 85277

**9.    ALLOWANCE AND ESTIMATION OF CLAIMS**

9.1    Categorization of Claims

A Claim shall be an Allowed Claim, a Reserved-For Claim, or a Disallowed Claim, based on the following provisions:

9.1.1 Allowed Claims.   A Claim shall be an Allowed Claim only if, and to the extent, the Claim has been Timely Submitted and Allowable in accordance with the following:

9.1.1.1 Timely Submission.   A Claim shall be considered Timely Submitted if at least one of the following applies to such Claim;

9.1.1.2 Listed.   The Claim is listed on the Schedules, is not listed as contingent, unliquidated or disputed, and is not included within a Proof of Claim;

9.1.1.3 Proof of Claim.   The Claim is reflected in a Proof of Claim filed by the Bar Date applicable to Claims; or

9.1.1.4 Otherwise Timely Submitted.   The Claim has been determined, by Final Order of the Bankruptcy Court, to be otherwise timely submitted; to be the subject of a timely "Informal Proof of Claim;" or to be deemed timely submitted without a Proof of Claim.

9.1.2 Allowable Claims.

A Claim shall be considered Allowable if at least one of the following applies to such Claim:

9.1.2.1 No Objection.   The Claim is Timely Submitted and is not the subject of a Timely Objection; or

9.1.2.2 Sustained Claim.   The Claim has been allowed, after consideration of all Timely Objections, by Final Order of the Bankruptcy Court.

9.1.3 Disallowed Claims.

A Claim shall be a Disallowed Claim if the Claim was not Timely Submitted, or has been disallowed by Final Order of the Bankruptcy Court.

9.1.4 Reserved-For Claims.

A Claim shall be a Reserved-For Claim if the Claim is not an Allowed Claim or a Disallowed Claim.   Each Reserved-For Claim shall be considered, for purposes of establishing reserves therefore, to be in an amount equal to (i) the amount listed on the Schedules, if no Proof of Claim has been filed, or (ii) the amount listed on a Proof of Claim.

9.1.5 Aggregation of Multiple Claims.

Multiple Proofs of Claim within the same Class filed by one Claimant, to the extent not duplicative, shall be aggregated and shall constitute a single Allowed Claim.

### 9.1.6 Objections and Bar Date for Filing Objections.

Except as provided above, an objection to a Claim shall be a Timely Objection if filed with the Bankruptcy Court, and served upon the holder of such Claim pursuant to the Bankruptcy Code and Bankruptcy Rules, no later than thirty (30) days after the Effective Date. The primary responsibility for objecting to Claims shall be with the Disbursing Agent.

### 9.1.7 Settlement of Claims.

Settlement of any objection to a Claim shall be permitted on the twenty-first (21st) day after notice of the settlement has been provided to the Disbursing Agent, the settling party, and other persons specifically requesting such notice, and if, on such date, there is no written objection filed, such settlement shall be deemed approved. In the event a written objection to the settlement is timely filed, the settlement must be approved by the Bankruptcy Court on notice to the objecting party at a regularly scheduled hearing conducted pursuant to the Bankruptcy Rules.

### 9.1.8 Distributions on Account of Disputed Claims.

No Distributions shall be made on account of a Disallowed Claim or a Reserved-For Claim.

### 9.1.9 Effect on Distributions of Reserved-For Claims.

If this Plan provides for a distribution pro rata to holders of Claims in a particular Class, when Reserved-For Claims remain in such Class, the Disbursing Agent shall calculate the amount distributable to each holder of a Claim on a pro-rata basis considering Reserved-For Claims as Allowed Claims. Notwithstanding such calculation, the Disbursing Agent shall retain the funds pro-rated on account of Reserved for Claims until such Claim becomes Allowed or Disallowed. Any funds held by the Disbursing Agent in accordance with this section shall be disbursed by the Disbursing Agent upon the entry of a Final Order resolving such Claim, and, if the Reserved-For Claim is Disallowed or Allowed in an amount less than the amount of the Reserved-For Claim, the Disbursing Agent shall recalculate the amount distributable to the holders of Allowed Claims.

9.1.10 Penalties and Fines.

Except as specifically provided by Final Order of the Bankruptcy Court, no distribution shall be made on account of, any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by the Debtors, and any Claim on account thereof shall be treated hereunder as such and disallowed to the extent of such fine, penalty, exemplary or punitive damages, late charges or other default-related charge, whether or not an objection is filed to it.

10. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases of the Debtors are rejected, with the exception of all executory contracts set forth in the Debtor's Schedules (and any accompanying Amendment to the Debtor's Schedules), pursuant to the provisions of §§ 365 and 1123 of the Bankruptcy Code. This Plan provision does not alter in any way orders of the Bankruptcy Court approving the assumption of executory contracts and leases. All such Orders are reaffirmed without modification and incorporated fully in the Plan so that the Plan is in compliance with those Orders.

11. MODIFICATION OF THE PLAN

In addition to their modification rights under § 1127 of the Bankruptcy Code, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtor may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

12. RETENTION OF JURISDICTION

Notwithstanding Confirmation of this Plan, the Bankruptcy Court shall retain its jurisdiction of this bankruptcy to the full extent allowed by law, including for the following purposes:

12.1 Determination of Claims and interests upon objection to such Claims by the Debtors or by any other party in interest;

- 38 -

12.2    Determination of requests for payment of Claims entitled to priority under §507(a)(2) of the Bankruptcy Code, including compensation of Parties entitled thereto;

12.3    Resolution of controversies and disputes regarding the interpretation or enforcement of the terms of the Plan;

12.4    Implementation of the provisions of the Plan and entry of Orders in aid of Confirmation of the Plan, including, without limitation, appropriate Orders to protect the Debtors;

12.5    Entry of an Administrative Order closing this case while Plan payments are made;

12.6    Entry of a Final Decree closing the case.

DATED this 28th day of May 2015,

LAW OFFICE OF BLAKE D.   GUNN
/s/ Blake D.   Gunn 019112
Blake D.   Gunn
P.O.   Box 22146
Mesa, AZ 8577
Attorney for Debtor in Possession